**SHERRELL PERFUMERS, INC., Plaintiff,**

v.

**REVLON, INC., Chanel, Inc., Guerlain, Inc., the Fragrance Foundation, Annette Green, Pablo Medina, John Revson, Mack Lewis and Annette Green Associates, Ltd., Defendants.**

No. 76 Civ. 4572 (RWS).

United States District Court, S. D. New York.

July 15, 1980.

Bass, Ullman & Lustigman, New York City, for plaintiff; I. Scott Bass, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Revlon, Inc., and John Revson; Jay Topkis, and Richard A. Briffault, New York City, of counsel.

## OPINION

SWEET, District Judge.

In accordance with the court's April 15, 1980 opinion, a hearing was held on July 8, 1980 to determine the admissibility under Fed.R.Evid. 803(24) of a tape recorded conversation. The background facts are set forth in the April 15 opinion. During the conversation, Norman Greif, the president of Givaudan Corporation, told Murray Poznak, the president of Sherrell Perfumers, Inc., that the presidents of Revlon and Chanel had informed him that if Givaudan were to sell essential oils to Sherrell, "it would probably hurt" Givaudan's relationship with Revlon and Chanel. The "president of Revlon" referred to in the conversation was apparently Paul Woolard, Revlon's senior executive vice president and president of Revlon's domestic cosmetic and fragrance division. Greif, who had previously worked for Revlon, was a long-term business associate of Woolard.

At the hearing, Greif admitted making the taped statements, but denied their truth. He testified that he had never had any conversations with Woolard or anyone else at Revlon regarding possible retaliation for dealing with Sherrell. He stated that he had made the statements to "placate" Poznak and to extricate Givaudan from the embarrassment of having reneged on a salesman's commitment to Poznak. He testified that he did not fabricate the story in advance of his meeting, but created it extemporaneously during the interview. Greif admitted that at the time of the meeting he was neither intoxicated, sick, nor under duress. Greif conceded that prior to discovering that the conversation had been taped, he had never disclosed his fabrication either to Lorenze, the Givaudan salesman who was present at the meeting, or to Givaudan's attorneys. Although he stated that he was not concerned about possible repercussions should Revlon and Chanel learn about his remarks to Poznak, Greif admitted that he would not have made the statements if he had known they were being recorded.

Woolard testified that he never made any statement to Greif pressuring Givaudan not to deal with Sherrell. The chief executive officer of Revlon has testified before a Congressional committee to the same effect.

In a prior opinion, this court held that the Greif statement was not admissible as an admission of a co-conspirator because it was not in furtherance of any conspiracy which may have existed between Revlon and Givaudan. Sherrell contends, however, that the statement is admissible under Fed.R. Evid. 803(24), the "other exceptions" provision.

The issue for this court is not to determine whether Woolard made the statements attributed to him by Greif during the June, 1975, conversations. Rather, the issue is whether the Greif conversation bears sufficient circumstantial indicia of reliability to permit its admission under Fed.R.Evid. 803(24). I conclude that sufficient circumstantial guarantees exist, and that the statement is admissible.

The factors supporting admissibility include the fact that the statement by Greif was strongly against penal and economic interest and would not have been made by a reasonable person unless true, the absence of intoxication, sickness or duress of Greif at the time the statements were made, the recording of Greif's remarks, thereby removing any issue as to authenticity, Greif's admission that the story was not fabricated pursuant to prior plan and that he would have been concerned had Chanel or Revlon learned of his remarks, and the availability of both Greif and Woolard for testimony at trial so that the jury will have a direct opportunity to assess whether the statements attributed to Woolard were in fact made. Under the tests set forth in *United States v. Iaconetti*, 540 F.2d 574 (2d Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977), and *United States v. Medico*, 557 F.2d 309 (2d Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977), there are sufficient circumstantial guarantees of trustworthiness to admit the conversation under Rule 803(24) despite the subsequent disavowals by Greif and Woolard.

■ If credited by the jury, the Greif conversation, when considered along with other probative evidence adduced by Sherrell, creates a factual issue as to whether Revlon and Revson participated in a concerted refusal to deal with Sherrell. Accordingly, the motion for summary judgment is denied. The case will be placed on the ready trial calendar.

IT IS SO ORDERED.