**In re Dr. J. Herbert FILL, Debtor.**

**Leon GRAY, Trustee in Bankruptcy of the Estate of J. Herbert Fill, Plaintiff,**

**v.**

**Antje Mullikas FILL and Kate Mullikas, Defendants.**

**Bankruptcy No. 85 B 11531 (TLB). Adv. No. 86–5127A.**

United States Bankruptcy Court, S.D. New York.

Jan. 15, 1987.

Paul, Weiss, Rifkind, Wharton & Garrison by Jeffrey B. Sklaroff, New York City, for the Trustee.

Walter, Conston & Schurtman, P.C. by William Schurtman, Gregory F. Hauser, New York City, for Kate Mullikas.

Kensington, James & Ressler by Stuart Bernstein, New York City, for Antje Mullikas Fill.

## MEMORANDUM DECISION ON PLAINTIFF'S MOTION IN LIMINE

TINA L. BROZMAN, Bankruptcy Judge.

Before the court is a motion *in limine* filed by the trustee in response to a defend-

ant's Notice of Intent to Offer Hearsay filed in this adversary proceeding. The motion was argued on December 15, 1986. We grant the trustee's motion in part and deny it in part.

Leon Gray, the trustee ("Trustee") of the estate of Dr. J. Herbert Fill ("Dr. Fill"), a chapter 7 debtor in this court, has commenced an adversary proceeding against Dr. Fill's ex-wife ("Mrs. Fill")[1] and her mother ("Mrs. Mullikas") alleging fraudulent transfers under bankruptcy and state laws. 11 U.S.C. § 548(a) and 544; N.Y. Debt. & Cred.Law §§ 273, 273-a, 276 (McKinney 1987).

The underlying factual dispute is as follows. Mrs. Mullikas asserts that she and her husband, now deceased, loaned money to their son-in-law, Dr. Fill, on several occasions from 1966 to 1980. No earlier than 1974, she obtained notes from him documenting loans allegedly made in 1966, 1969 and 1973 and she later obtained a note for a fourth loan allegedly made in 1980. She has admitted that the notes relating to the claimed 1966, 1969 and 1973 loans were backdated to those years. In October 1982, she brought an action in New York State Supreme Court (the "New York Action") seeking return of these monies and obtained a default judgment in the amount of $272,000. In her affidavit in support of her motion for summary judgment in that action, she swore that the notes were made and delivered to her in October 1966, January 1969, August 1973 and April 1980. Although his mother-in-law did not execute judgment, Dr. Fill, in 1983, some two weeks after the judgment was obtained, voluntarily sold his New York cooperative, utilizing $272,000 in proceeds to satisfy her judgment. The Trustee alleges that at about this same time, Dr. Fill also transferred his interest in a condominium in the Virgin Islands to Mrs. Fill for no consideration. The Trustee essentially asserts that the notes were created, the New York Action commenced and the condominium transferred as part of a design to put Dr. Fill's assets out of the reach of Gray Inter-

national, Inc. ("Gray"), to whom Dr. Fill had incurred substantial indebtedness through his commodity trading. In February 1982, Gray had sued Dr. Fill in New York and was awarded judgment in excess of one million dollars. Dr. Fill did not satisfy the judgment but instead filed for chapter 7 relief.

Leon Gray, the president of Gray, was appointed trustee and commenced this adversary proceeding. Discovery ensued. Because Mrs. Mullikas, an elderly and somewhat infirm resident of Germany, indicated through her counsel that she would not testify at trial, the Trustee chose not to take her deposition. After discovery was closed, Mrs. Mullikas' attorney filed a Notice of Intent to Offer Hearsay Evidence. Armed with a letter from Mrs. Mullikas' physician, her attorney states that she is too ill to travel to the United States for trial. Thus, counsel sought first in his notice to offer certain hearsay testimony pursuant to the hearsay "catch-all" exceptions embraced in Fed.R.Evid. 803(24) and 804(b)(5). Several other grounds were later offered as justification for the admission of the proposed hearsay testimony but those reasons are best understood after a review of the statements themselves.

First, counsel seeks to offer testimony of Hans Blunck ("Blunck") of Germany who is described as a "longtime family advisor and friend of Mrs. Mullikas." As best we can gather from the papers submitted, Blunck will testify that: beginning about 1975, Mr. and Mrs. Mullikas told him on several occasions that they had loaned approximately $250,000 cash to Dr. Fill during the period 1966 to 1976; he advised Mrs. Mullikas to obtain signed receipts from Dr. Fill for the amounts loaned and; in July, 1976, he was present at a discussion in which Dr. Fill acknowledged the loans and promised to repay them.

Next, counsel seeks to waive the attorney-client privilege which is said to exist under German law and introduce the testimony of Dr. Juergen Koether ("Koether")

---

1. It is unclear from the record whether Dr. and Mrs. Fill were divorced; he contends that they were. The Trustee states that, in any event, they live together.

of Germany who since 1978 has been the personal attorney of originally Mr. and Mrs. and now Mrs. Mullikas. Koether will testify to the effect that: Mr. and Mrs. Mullikas informed him several times from 1978 through 1984 about loans from them to Dr. Fill in excess of $300,000 made during 1966 to 1980 and Mrs. Mullikas told Koether sometime after she commenced the New York Action that Dr. Fill had previously signed notes to repay the loans.

The Trustee brought on this motion *in limine* arguing that Mrs. Mullikas is not unavailable, the letter from her doctor being insufficient to prove her physical infirmity; that there are no guarantees of trustworthiness to the hearsay statements; and because Dr. and Mrs. Fill alone or together with Mrs. Mullikas can testify, the Blunck and Koether testimony is not the most probative evidence. He also argues that the interests of justice require exclusion of the hearsay.

In her answering papers, Mrs. Mullikas urges grounds additional to the "catch-all" exceptions for admission of the testimony, specifically:

1) Blunck's testimony as to Dr. Fill's statements is admissible under Fed.R. Evid. 801(d)(1)(B) as rebuttal of a charge of recent fabrication or improper influence or motive;

2) Blunck's testimony as to Dr. Fill's statements is admissible under Fed.R. Evid. 801(d)(2)(A) as being offered against the Trustee as a representative of Dr. Fill;

3) because the Trustee has indicated he will introduce Mrs. Mullikas' affidavit from her prior lawsuit with Dr. Fill, the affidavit is hearsay which can be rebutted by hearsay evidence pursuant to Fed. R.Evid. 806;

4) because the Trustee has indicated he will introduce Mrs. Mullikas' admissions which he obtained during discovery in this lawsuit, any hearsay evidence is admissible under Fed.R.Evid. 806 to rebut the admissions;

5) because intent is critical to the fraudulent transfers which the Trustee has pleaded, the proffered testimony is evidence of Mrs. Mullikas' and Dr. Fill's states of mind and is admissible as an exception to hearsay under Fed.R.Evid. 803(3) or as non-hearsay; and

6) Mrs. Mullikas' statements to Blunck that she made cash loans without written acknowledgements were statements against her pecuniary interest and thus admissible under Fed.R.Evid. 804(b)(3).

The Trustee replies that

1) the recent fabrication exception embraced in rule 801(d)(1)(B) is inapplicable because the offered statement was made many years after the event;

2) the Mullikas affidavit which he intends to introduce is not being offered for its truth and thus cannot be rebutted by hearsay evidence through Fed.R.Evid. 806;

3) Fed.R.Evid. 801(d)(1)(B) is inapplicable because Mrs. Mullikas is not testifying;

4) the statements shed no light on the issue of her intent at the time she commenced her action; and

5) the statements are not against her pecuniary interest because those interests, according to her, were never in doubt.

Finally, the Trustee requests that should this court allow the hearsay testimony he be permitted to take discovery of Blunck, Koether and Mrs. Mullikas sufficiently in advance of trial and at the defendants' expense. Mrs. Mullikas' counsel responds that should the Trustee seek discovery from Blunck and Koether while they are still in Germany, he must comply with the Hague Evidence Convention. Further, he argues that the Trustee chose to limit his discovery from Mrs. Mullikas to admissions, and that any new discovery request is belated.

DISCUSSION

A. *Blunck's Testimony as to Dr. Fill's Statements*

1. *Improper Motive*

■ Mrs. Mullikas argues that Blunck's testimony as to Dr. Fill's statements should be admissible to rebut any express or implied charge the Trustee will make regard-

ing Dr. Fill's improper motive, that is, his alleged desire to denude his estate to the benefit of his family and the detriment of his creditors. We agree.

The leading case in this circuit concerning admissibility of a prior consistent statement offered to rebut a charge of recent fabrication or improper motive is *United States v. Quinto*, 582 F.2d 224 (2d Cir. 1978) where it was held that three requirements must be met before the statement may be deemed non-hearsay under Fed.R. Evid. 801(d)(1)(B). First, the proponent must demonstrate that the prior consistent statement is consistent with the witness' in-court testimony. Second, the proponent must establish that the statement is being offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. Finally, the proponent must demonstrate that the prior consistent statement was made before the time that the supposed motive to falsify arose. *Id.* at 234; *United States v. Shulman*, 624 F.2d 384, 393 (2d Cir.1980).

We believe that the 1976 conversation will meet all three requirements. The conversation would appear to be consistent with the testimony which Dr. Fill will give. Second, the conversation will be offered to rebut the Trustee's charge that Dr. Fill concocted with his relatives a scheme to rid himself of valuable assets so as to deprive Gray of any satisfaction of its claim. Third, the conversation took place years prior to the time that Dr. Fill incurred his indebtedness to Gray, which indebtedness is, as we understand the Trustee's theory, the predicate for Dr. Fill's ill motive. Accordingly, Blunck's testimony as to Dr. Fill's statement should be admissible as a prior consistent statement offered to rebut a charge of improper motive.

#### 2. *State of Mind*

■ Counsel also argues that Blunck's testimony regarding Dr. Fill's conversation is admissible as circumstantially revealing Dr. Fill's state of mind and his lack of intent to defraud his other creditors.

Because Dr. Fill's state of mind or intent is critical to certain of the theories pleaded in this fraudulent transfer action,[2] counsel seeks to admit the testimony under the state of mind exception to the hearsay rule contained in Fed.R.Evid. 803(3).

A traditional example of a statement used to prove mental state at the time of speaking is a statement accompanying a transfer of property showing intent, or lack of intent, to defraud creditors. Here, we have instead statements indicating, at a time before a motive to falsify arose, the intention to repay certain indebtedness, the existence of which is challenged. The statements are to be offered to prove that transfers made some six or so years later were consistent with this earlier expressed intention and were not intended to hinder, delay or defraud creditors. One leading commentator explains that although the offered statement is required to describe the declarant's mental state when the statement is made, the evidentiary effect of the statement is effectively broadened because states of mind can continue in time:

> Although it is required that the statement describe a state of mind or feeling existing at the time of the statement, the evidentiary effect of the statement is broadened by the notion of the continuity in time of states of mind. For example, if a declarant tells on Tuesday of his then-existing intention to go on a business trip for his employer the next day, this will be evidence not only of his intention at the time of the statement but also of the same purpose the next day when he is on the road.... Since, however,

---

**2.** 11 U.S.C. § 548(a), upon which the Trustee relies, requires a transfer of property by the debtor with an "actual intent to hinder, delay, or defraud...." Clearly, Dr. Fill's state of mind is in issue. Section 548(c) offers a defense to the transferee who takes for value and in good faith. Mrs. Mullikas has pleaded good faith in

her answer, putting her intent in issue. Likewise, the state statutes invoked by the Trustee require an evaluation of Dr. Fill's intent, and Mrs. Mullikas' intent. *See* N.Y. Debtor and Creditor Law § 272(a) and § 276 (McKinney 1987).

the duration of state of mind or emotion varies with the particular attitudes or feelings at issue and with the cause, it is reasonable to require as a condition of invoking the continuity notion that the statement mirror a state of mind which, in light of all the circumstances including proxity [sic] in time, has some probability of being the same condition existing at the material time....

McCormick, Evidence, § 294, at 844–45 (Cleary 3d ed. 1984).

At least as we understand what the testimony will be, namely, that Dr. Fill intended to repay the loans, it falls within the hearsay exception created by rule 803(3) because it is declarative of his then existing state of mind—which may be somewhat probative of his intention six years later when he repaid the alleged loans. That the Trustee believes Dr. Fill's words to have been false does not affect the admissibility of the statement. *United States v. DiMaria*, 727 F.2d 265, 271 (2d Cir.1984). We note, however, that undoubtedly there will be substantial question as to the weight which should be given to this testimony in light of the significant number of years between the making of the statement that the loans would be repaid and the actual repayment of the loans, after the indebtedness to Gray was incurred.[3]

Concluding as we have that the testimony will be admissible to rebut a charge of improper motive or as declaratory of Dr. Fill's then state of mind, we need not address the other grounds offered for its admission.

**B. Blunck and Koether's Testimony as to the Mullikases' Declarations**

**1. *Rules 801(d)(1)(B) and 806***

We next review whether the hearsay testimony of Blunck and Koether that the Mullikases told them of the loans and that Dr. Fill signed the notes is admissible as

either prior consistent statements under rule 801(d)(1)(B) or as evidence to rebut other hearsay evidence under rule 806. As Mrs. Mullikas concedes, the success of these arguments hinges on the introduction by the Trustee of an affidavit from Mrs. Mullikas filed in her state court action against Dr. Fill.

■ Reliance on rule 801(d)(1)(B) is misplaced. That rule specifically requires that the declarant testify. Introduction of an affidavit of Mrs. Mullikas is no substitute.

■ Reliance on rule 806 is equally unavailing. Because the Trustee states that the affidavit will not be offered for the truth of the matter asserted, *see* rule 801(c), but rather to show that Mrs. Mullikas previously testified that the notes were executed on the dates they bear, the affidavit is not hearsay which is open to rebuttal by other hearsay evidence.

■ In his post argument letter, Mrs. Mullikas' counsel offers an alternative theory for the admission of Blunck's and Koether's testimony. He urges that because the Trustee is offering for their truth Mrs. Mullikas' admissions (obtained pursuant to Fed.R.Civ.P. 36 and Fed.R.Bankr.P. 7036 in this action), such admissions are hearsay and thus rebuttable by other hearsay evidence pursuant to rules 806 and 801(d)(1)(B). This argument is fatally flawed. Matters admitted under rule 36 of the Federal Rules of Civil Procedure are deemed conclusive for the purposes of the pending action in which they were sought. Fed.R.Civ.P. 36(b). They are categorized as "judicial admissions" and, like pleadings and other stipulations in the case, are not considered evidence at all because they dispense wholly with the need for proof of the fact. McCormick, Evidence § 262 at 776 (Cleary 3d ed. 1984), *citing* Finman, *The Request for Admissions in Federal Civil Procedure*, 71 Yale

---

**3.** We need not determine whether Dr. Fill's statements are properly admissible as non-hearsay or rather as an exception to hearsay since, for these purposes, they are being offered to prove state of mind and are not being offered to prove the truth of the matter asserted. *United*

*States v. Southland Corp.*, 760 F.2d 1366, 1376 (2d Cir.1985), *cert. denied,* ⸺ U.S. ⸺, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985). But, as discussed above, they will probably be admissible for their truth as prior consistent statements.

L.J. 371 (1962). Apart from a request under rule 36(b) to withdraw the admission, the admissions stand and are not subject, as are evidential admissions, to be explained or contradicted. *Id.* Thus, in short, judicial admissions cannot serve as the predicate for admission of hearsay testimony pursuant to rules 806 and 801(d)(1)(B).

### 2. *State of Mind*

■ Counsel also argues that the testimony of Blunck and Koether as to the Mullikases statements that they loaned the money and her statement that Dr. Fill signed the notes reveals her then state of mind which is arguably consistent with her later lack of intent to defraud Dr. Fill's other creditors. Because Mrs. Mullikas' and Dr. Fill's states of mind or intent are central to determination of this pending fraudulent conveyance action,[4] counsel seeks to admit the testimony under the state of mind exception to the hearsay rule provided by Fed.R.Evid. 803(3).

We decline to admit so much of Blunck and Koether's testimony as will state that the Mullikases told them on various occasions they had, in the past, loaned money to Dr. Fill because we do not believe the statements to be so much probative of her state of mind as of the very existence of the loans[5] and because the statements are specifically excluded in the hearsay exceptions.

Our own court of appeals was faced with review of similar testimony in *United States v. Murray,* 297 F.2d 812 (2d Cir. 1962), *cert. denied,* 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962). The defendant in *Murray* was convicted of income tax evasion, the critical issue at his trial being whether he in fact received a loan. A witness, other than the defendant or the purported lender was asked: "Did [x] indicate that he ever lent [the defendant] money?" The government objected and the defendant's counsel argued, among other things, that the testimony fell within the hearsay exception relating to statements reflecting the state of mind of the declar-

ant. Affirming the trial judge's refusal to admit the testimony, the Second Circuit stated:

> Clearly a statement by [x] that he had on prior occasions lent money to the defendant, or even a statement that on this occasion he had lent him the [money] in question … would tend primarily to show not [X's] intention or state of mind toward [the defendant] as he spoke but whether or not a loan had actually been made. Thus the out-of-court statement was offered for the forbidden purpose of proving the truth of its contents, and does not come within this or any other exception to the hearsay rule. *Shepard v. United States,* 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933); McCormick, Evidence § 271 (1954).

*Murray,* 297 F.2d at 816. We find this case both applicable and persuasive.

■ In addition, the statements, which would tend primarily to show not Mrs. Mullikas' intention, but whether or not loans had actually been made, are statements of memory and belief and thus, fall within the exception to those statements admissible under Rule 803(3). *See United States v. Lawal,* 736 F.2d 5, 8 (2d Cir.1984). For the same reason, the testimony of Koether that Mrs. Mullikas told him after she commenced suit against Dr. Fill that she had obtained written acknowledgments is expressly excluded from the state of mind hearsay exception embraced in rule 803(3). *Id.; United States v. Margiotta,* 688 F.2d 108, 136 (2d Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *Marshall v. Commonwealth Aquarium,* 611 F.2d 1, 3–5 (1st Cir.1979).

### 3. *Statement Against Pecuniary Interest*

■ Counsel suggests that Blunck's testimony as to what Mrs. Mullikas said is admissible under rule 804(b)(3) in that her statement that loans were made without written acknowledgements is a statement against her pecuniary interest. We find this argument wholly unconvincing. If the

---

**4.** *See* note 2, *supra.*

**5.** For the same reason, they should not be considered non-hearsay.

statement bears at all on Mrs. Mullikas' pecuniary interest, the statement surely is not against that interest; indeed, it suggests that money was owed her. And rule 804(b)(3) makes clear that to be embraced by the hearsay exception, the statement must be, at the time of its making, "so far contrary to the declarant's pecuniary ... interest ... that a reasonable man in his position would not have made the statement unless he believed it to be true." We do not find this to be the case.

### 4. The "Catch-All" Exceptions

Mrs. Mullikas seeks admission of the hearsay testimony under the "catch-all" exceptions to hearsay provided in rules 803(24) and 804(b)(5). The rules mirror each other, the only difference being that the latter requires the declarant be unavailable while the former does not. But to admit the proffered evidence under either rule, there must be certain "circumstantial guarantees of trustworthiness." We find those guarantees lacking here and therefore decline to admit the testimony.

■ We begin by noting that these residual exceptions were intended to be applied with great caution. The rules "do not contemplate an unfettered exercise of judicial discretion, but they do provide for treating new and presently unanticipated situations which demonstrate a trustworthiness within the spirit of the specifically stated exceptions." McCormick, Evidence, § 324.1, at 907 (Cleary 3d ed. 1984) quoting the Advisory Committee's Note, Fed.Rule Evid. 803(24). Indeed, our court of appeals has stated that the residual exceptions "are not intended as 'a broad license' to trial judges to admit hearsay but for use under rare and exceptional circumstances with the trial judge being admonished to 'exercise no less care, reflection and caution than the courts did under the common law in establishing the now-recognized exceptions to the hearsay rule.'" *United States v. Medico*, 557 F.2d 309, 315 (2d Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d

480 (1977), *quoting* S.Rep. No. 1277, 93rd Cong., 2d Sess. 19, U.S.Code Cong. & Admin.News 1974, pp. 7051, 7065.

■ As discussed above, the proffered testimony of Blunck, that the Mullikases told him beginning in 1975 that they had loaned approximately $250,000 to Dr. Fill between 1966 to 1976, is excluded from admissibility as declarative of state of mind because it is "a statement of memory or belief to prove the fact remembered or believed ..." Fed.R.Evid. 803(3). The special assurance of reliability for statements of present state of mind rests upon their spontaneity and probable sincerity. McCormick, Evidence § 294 at 844 (Cleary 3d ed. 1984). But where the statement is *expressly* excluded from admissibility because of lack of spontaneity and no other exception to the hearsay rule applies, the presumed trustworthiness is lacking. Only in a highly unusual case, which we do not have here, might it be proper under those circumstances to utilize the residual exceptions to the hearsay rule. Statements of memory and belief are not the "new and presently unanticipated situations" envisioned by the Advisory Committee for utilization of the residual exceptions. On the contrary, the Advisory Committee indicated that "[t]he exclusion of 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind."

Moreover, Blunck would testify that beginning in 1975, Mr. and Mrs. Mullikas told him on a number of occasions that they had loaned approximately $250,000 to Fill during the period 1966 to 1976. Thus, the lapse in time is significant, even ten years in some instances, and consequently undermines the testimony's trustworthiness, particularly since the declarants are not testifying.[6] *United States v. Iaconetti*, 406

---

**6.** Blunck's testimony as to Dr. Fill's statements is distinguishable because it is admissible to prove that, if transfers of money were indeed made and were loans, Dr. Fill intended, at the

time he made the statements, to repay the indebtedness. There was no lapse in time nor any statement of memory or belief offered to prove

F.Supp. 554, 559 (E.D.N.Y.), *aff'd,* 540 F.2d 574 (2d Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752, *reh. denied,* 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 589 (1977) (same day); *Robinson v. Shapiro,* 646 F.2d 734, 743 (2d Cir.1981) (immediately). Finally, we note that the rules require the evidence to be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." The most probative evidence here as to the existence of the loans, even assuming Mrs. Mullikas' unavailability, is Dr. Fill's own testimony. And he will testify and be available for cross examination.

Koether's testimony also reveals few, if any, guarantees of trustworthiness. First, his statement that Mrs. Mullikas told him *after* she commenced suit against Dr. Fill that Dr. Fill had previously signed notes to repay loans is inherently untrustworthy. Certainly, after Mrs. Mullikas commenced suit she had every motive to fabricate. As discussed earlier, the timing of this "after the fact" testimony is, in and of itself, based on these facts, enough to deny admissibility. Additionally, like Blunck's testimony, Koether's testimony relates to statements made by Mrs. Mullikas between 1978 through 1984 about loans made to Dr. Fill from 1966 to 1980. Again, we question the reliability of such statements given the great lapse in time. Much is made of the argument that Koether's testimony is inherently reliable since he is an attorney and Mrs. Mullikas is waiving her attorney client privilege. We are not impressed with this argument for his position as her attorney does not insure greater reliability. In fact, his current position today as Mrs. Mullikas' personal attorney might militate in favor of his offering testimony favorable to her.

Admission of the hearsay testimony under the residual exceptions is within this court's sound discretion. *Robinson v. Shapiro,* 646 F.2d 734, 743 (2d Cir.1981). For the reasons discussed above, we decline to admit it.[7]

### C. *Discovery Procedure*

Because we find admissible a portion of Blunck's proposed testimony, we must next address Mrs. Mullikas' argument that pretrial discovery from Blunck must be obtained in accordance with the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, T.I. A.S. No. 7444 (the "Hague Evidence Convention") which treaty prescribes specific methods of obtaining evidence abroad.[8]

The Trustee argues that Blunck should not be allowed to hide behind the Hague Evidence Convention because he will be voluntarily subjecting himself to jurisdiction here. Therefore, the Trustee urges that Blunck should be made available for discovery sufficiently in advance of trial.

An increasing number of cases are emerging which focus on the impact of the Hague Evidence Convention, specifically, whether it is mandatory and exclusive, whether it should be an avenue of first resort, whether it applies to party litigants over whom the forum court has jurisdiction and whether it applies when documents are abroad but the witnesses here. Notwithstanding some disagreement in the cases, the courts are uniform in their view that at least where discovery is sought from a non-party witness over whom the court does not have *in personam* jurisdiction, the Hague Evidence Convention governs. We agree. *See, e.g., In re Anschuetz & Co.,* 754 F.2d 602, 615 (5th Cir.1985) (U.S. appeal pending); *Lasky v. Continental Products Corp.,* 569 F.Supp. 1227 (E.D.Pa. 1983); *Graco v. Kremlin, Inc.* 101 F.R.D. 503, 520 (N.D.Ill.1984); *Murphy v. Reifenhauser KG Maschinenfabrik,* 101 F.R.D.

---

the fact remembered or believed. Further, Dr. Fill is testifying, giving us a chance to judge his credibility. *See Sherrell Perfumers, Inc. v. Revlon, Inc.,* 524 F.Supp. 302, 303 (S.D.N.Y.1980). Moreover, the testimony is admissible as a prior consistent statement.

**7.** No impediment exists to Blunck's testifying about the advice he gave Mrs. Mullikas. He will be available to be cross-examined. The testimony is not hearsay.

**8.** Both the United States and the Federal Republic of West Germany are parties to this treaty.

360, 363 (D.Vt.1984); *Work v. Bier*, 106 F.R.D. 45, 48 (D.D.C.1985).[9] Consequently, so long as the Trustee seeks discovery from Blunck in Germany, the Trustee must comply with the Hague Evidence Convention.

Application of this treaty, which was intended to expand and facilitate discovery abroad, was not, however, intended to detract from a fair trial. Recognizing this very point, one court aptly stated:

> [W]hile the Evidence Convention quite properly governs the gathering of evidence in West Germany, it does not govern the conduct of a trial in this court. At a minimum, therefore, it would seem that the defendant can be precluded from presenting at trial any evidence not adequately disclosed before trial, and any witness opposing counsel has not had a reasonable opportunity to depose.

*McLaughlin v. Fellows Gear Shaper Company*, 102 F.R.D. 956, 958 (E.D.Pa.1984); *see also In re Messerschmitt Bolkow Blohm*, 757 F.2d 729, 732–33 (5th Cir.1985), *cert. granted,* — U.S. ——, 106 S.Ct. 1633, 90 L.Ed.2d 179, *order granting cert. vacated,* — U.S. ——, 106 S.Ct. 2887, 90 L.Ed.2d 975 (1986).

We therefore hold that if the Trustee seeks discovery of Blunck, a nonparty witness, while Blunck is in Germany, he must do so in accordance with the Hague Evidence Convention. Alternatively, since Blunck is voluntarily coming to the United States to testify, arrangements should be made for the Trustee to depose him here reasonably in advance of the trial in this action.

As a final matter, pursuant to Fed. R.Civ.P. 16(b), made applicable to this adversary proceeding by Fed.R.Bankr.P.

7016, a scheduling order which sets an end to discovery may be modified "upon a showing of good cause." Given the eleventh-hour notice of an intention to offer hearsay testimony and given that Blunck will testify respecting advice which he gave Mrs. Mullikas, we believe that such good cause has been established. *Cf. Gestetner Corporation v. Case Equipment Company*, 108 F.R.D. 138 (D.Me.1985). Should the Trustee wish to depose Mrs. Mullikas in Germany,[10] he may do so. We deny the Trustee's request that Mrs. Mullikas bear his expenses for the depositions. The court will consider at the pre-trial conference scheduled for January 20, 1987 whether the trial date should be adjourned.

Settle order in conformity with this opinion.

---

9. We note authority in this district for the proposition that the Hague Evidence Convention offers only alternative discovery procedures which are not exclusive or mandatory. *Compagnie Francaise D'Assurance v. Phillips Petroleum Company*, 105 F.R.D. 16, 18 (S.D.N.Y.1984). There, however, discovery was being sought from a party defendant over whom the court had jurisdiction. The situation at bar is quite different. Inasmuch as we do not now have *in personam* jurisdiction over Blunck, the Federal Rules of Civil Procedure as they relate to discovery are unavailable; the Hague Evidence Convention is today the only discovery tool. Obviously, this situation can change when Blunck comes to the United States.

10. No claim was made that the Hague Evidence Convention would bar the deposition of Mrs. Mullikas. *See Cooper Industries, Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919 (S.D.N.Y. 1984).