**In re Dr. J. Herbert FILL, Debtor.**

**Bankruptcy No. 85 B 11531(TLB).**

United States Bankruptcy Court,
S.D. New York.

March 23, 1988.

---

Paul, Weiss, Rifkind, Wharton & Garrison by Jeffrey B. Sklaroff, New York City, for Trustee.

Finkel, Goldstein & Berzow by Harold S. Berzow, New York City, for debtor.

## MEMORANDUM OPINION AND ORDER ON TRUSTEE'S OBJECTION TO CLAIM OF EXEMPT PROPERTY

TINA L. BROZMAN, Bankruptcy Judge.

J. Herbert Fill, the debtor, is a self-employed physician licensed to practice medicine and surgery and board certified in psychiatry. On September 19, 1985 he filed a petition under Chapter 7 of the bankruptcy code (the Code), prompted, in large part, by the docketing against him of a $1,037,644.13 judgment by Gray International, Inc.[1]. Leon Gray, who is the principal of the judgment creditor, is Dr. Fill's bankruptcy trustee (the Trustee). Dr. Fill has claimed as exempt certain property including a $39,633.76 Keogh account at the Anchor Savings Bank, a $9,992.21 Keogh account with Merrill Lynch Pierce Fenner and Smith (collectively, the Keogh Accounts) and a $2,166.37 individual retirement account at the Anchor Savings Bank (the IRA). In the absence of bankruptcy, Dr. Fill would have the right to make withdrawals from each of these accounts.

The Trustee objects to the claimed exemptions on the grounds that the Keogh Accounts and the IRA are not reasonably necessary for the support of Dr. Fill or any dependent as required by § 282 of the New York Debtor and Creditor Law (McKinney 1988) (Debtor and Creditor Law). Further, the Trustee alleges that the Keogh Accounts and the IRA do not constitute exempt property under section 282(2)(e)(i) of the Debtor and Creditor Law and section 5205(c) of the New York Civil Practice Law and Rules (McKinney 1978) (CPLR) because each is in the nature of a self-settled, revocable trust established by the debtor for his own benefit.

---

1. Many of the facts underlying this judgment are set forth in our earlier opinion in which we declared fraudulent certain transfers made by Dr. Fill. *See Gray v. Fill (In re Fill)*, 68 B.R. 923 (Bankr.S.D.N.Y.1987).

We conducted a trial of the issues at which there emerged very little factual dispute.[2] What the parties disputed is the conclusions which flow from the facts adduced. After the trial had concluded, the debtor directed our attention to an amendment to section 5205(c) of the CPLR (effective June 8, 1987). The debtor urged that the effect of the amendment exempts Keogh accounts completely from the enforcement of a money judgment creditor. Read together with section 282 of Debtor and Creditor Law, the debtor argues, the amendment exempts the Keogh Accounts absolutely and obviates any inquiry into the debtor's reasonable needs. The parties were requested to further brief the court in light of the amendment and have done so.

## FACTS

Dr. Fill was 64 years old on March 4, 1988. He is not a well man. He had a minor heart attack in 1980 and a major one in 1981 which caused him to stop working for about three months. He slowly began to resume working afterwards but was set back in 1982 by a stroke which left him temporarily paralyzed in the left hand and leg and temporarily unable to maintain normal speech.

He currently suffers from diabetes, hypertension and angina, all of which require constant medication. As a result of his diabetes, he has developed a cloudiness in his right eye which is progressively worsening and cannot be remedied. He functions for all intents and purposes with the vision in his unaffected eye.

The nature of Dr. Fill's medical practice has changed as a consequence of his ill health. Because of the stress and demands of a psychiatric practice, he has forsaken it. He is able to practice general medicine, so he maintains a modest general practice of patients with fairly insubstantial problems. He also practices homeopathic medicine and acupuncture. He must rest between patients and can schedule only one each 45 minutes.

Until recently, he saw patients from 8:30 a.m. to 12:00 noon each weekday. Sometimes he also saw a couple of patients in the late afternoon. As a result of the Trustee's sale of Dr. Fill's medical office (an apartment in a cooperative at 1056 Fifth Avenue in Manhattan), he has entered into an informal, undocumented arrangement to sublet space from another doctor three half days a week for $1,500 a month (which is $400 a month more than he paid for the maintenance on the cooperative). Because of the limited availability of the new quarters and the increased cost, he estimates that his income will be halved. Dr. Fill testified that he did not feel comfortable entering into a lease or more formal arrangement because of his deteriorating health. As he put it "I could not go into a long term lease or commit myself because I don't know how long I can keep this up." Tr. 74.

Between the years 1980 through 1986 the gross receipts (prior to any deductions for business expenses at all) and adjusted gross income which Dr. Fill reported on his tax returns were as follows:

| Year | Gross Receipts | Adjusted Gross Income |
|------|----------------|------------------------|
| 1986 | $123,215 | $68,188 |
| 1985 | 89,833 | 41,616 |
| 1984 | 71,434 | 14,634 |
| 1983 | 60,175 | 25,596 |
| 1982 | 50,498 | 20,018 |
| 1981 | 45,431 | 158 |
| 1980 | 69,986 | 26,788 |

Although the Trustee's counsel spent a great deal of time reviewing the propriety of each of the expenses which Dr. Fill subtracted from his gross receipts to arrive at his adjusted gross income, it is clear that he had many permissible expenses of his practice which he had to deduct from his gross receipts. It is also clear that by and large the adjusted gross income is reflective of his earnings, even if one quarrels with one or two thousand dollars of deductions here or there.

---

**2.** We make this observation because it is in marked contrast to the fraudulent transfer action, where we seriously questioned Dr. Fill's credibility. In this matter the Trustee has elicited nothing to tarnish Dr. Fill's testimony and has not even suggested that any of Dr. Fill's testimony is questionable or untruthful.

Based on Dr. Fill's uncontradicted testimony, we calculate that, exclusive of taxes which he will have to pay, he presently needs at least $30,000 for his basic necessities of life such as his share of the maintenance on the family residence,[3] clothing, insurance, food, utilities, medical expenses, and travel.[4]

## DISCUSSION

Section 522(b) of the Bankruptcy Code permits an individual debtor to chose between the exemptions contained in Section 522(d) of the Code or applicable state law unless the state has "opted out" of the federal exemptions, relegating its domiciliaries to exemptions provided under state law alone.[5] New York is one of the states which has decreed that its domiciliaries cannot utilize the federal exemptions set forth in section 522(d) of the Code. *See* section 284 of the New York Debtor and Creditor Law (McKinney 1988).

When Dr. Fill filed his chapter 7 petition in September 1985, the New York exemption statute (§ 282 of the Debtor and

Creditor Law) provided, among other things, that a debtor may exempt from the bankrupt estate property exempt from execution by the holder of a money judgment under CPLR § 5205, and a pension or profit sharing plan [6] to the extent reasonably necessary for the support of the debtor or his dependents.[7] In June 1987, section 5205(c) of the CPLR was amended to exempt pension and profit sharing plans in their entirety from execution by holders of money judgments.

Arguing that, in New York, exemption statutes are remedial, and remedial statutes are given retroactive operation, *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 453, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), *cert. denied sub nom. Estwing Manufacturing Co., Inc. v. Singer*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); New York Statutes § 55 (McKinney 1971), Dr. Fill asks us to apply the amendment to his case. Further, the debtor urges that there is no inconsistency between the two applicable subsections of the first paragraph of section 282 by virtue of the amendment. The

---

3. The Trustee contends that we should consider Dr. Fill to live rent-free because his former wife owns their residence. We note, first that we have impressed that residence with a constructive trust in favor of the Trustee in conjunction with the fraudulent transfer action. Moreover, in fact, Dr. Fill contributes to the monthly maintenance. Further, if Dr. Fill did not live with Mrs. Fill, he would have to pay rent somewhere, and probably at a cost more than the $8,800 which he contributes yearly to the maintenance. Thus, we cannot conclude that he lives and will live rent-free.

4. This does not include any expenditures for the Fills' son, who is no longer a minor, nor for Dr. Fill's continuing medical education, since he takes that as a business expense.

5. Section 522(b) provides in pertinent part:
[A]n individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—
(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,
(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable

on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place;

6. If certain conditions are all met the exemption for pension or profit sharing plans is not available. One of the conditions is that the plan does not qualify under certain sections of the Internal Revenue Code. The debtor's unrefuted contention is that this plan does qualify under one of the applicable sections. Thus, the limitation does not apply to this case.

7. The Trustee argues that because section 5205 of the CPLR does not permit exemptions of Keogh accounts from execution by holders of money judgments, such accounts are not encompassed by section 282 of the Debtor and Creditor Law. Section 282 allows the debtor to exempt the property listed under any of subsections (i), (ii) and (iii) of the first paragraph. The Trustee's argument would read the conjunctive "and" out of the statute. Thus, it is irrelevant that section 5205 does not allow this exemption as long as another subsection of the first paragraph of section 282 permits the exemption.

argument posited is that the rule of construction *ejusdem generis* requires the court to look to the more specific part of the statute where applicable; here, the amended section 5205(c) (made applicable by subsection (i) of the first paragraph), which would exempt the Keogh Accounts in their entirety regardless of whether the funds are reasonably necessary for support, is said to be more specific than the bankruptcy exemption contained in subsection (iii)(2).

The Trustee, on the other hand, sets forth three arguments to refute those of the debtor. He argues first that section 522 of the Code, as New York recognizes (*see* § 282 of the Debtor and Creditor Law), specifically limits a debtor to exemptions provided by the state law applicable on the date the petition was filed. The amendment was not enacted, much less effective, on September 19, 1985, and thus is argued to be inapplicable to the case at bar. Second, the Trustee argues that the application of the amendment retroactively to this debtor's property would constitute an impermissible taking of property which belongs to the debtor's creditors in violation of the Fifth Amendment. Finally, the Trustee argues that a basic rule of statutory construction is that when one statute incorporates another specific one, and the latter is amended, the amendments do not become incorporated in the former. *See* New York Statutes § 197, P. 367 (McKinney 1971).[8]

Section 522(b) of the Code provides that a state may prescribe a list of exclusive exemptions for a debtor domiciled within that state. If a state elects to adopt its own set of exemptions, section 522(b)(2)(A) unambiguously provides that the bankruptcy court must look to the state law "that is applicable on the date of the filing of the petition ..." The debtor argues that this language in section 522(b) does not retain any effect and is inapplicable once a state has opted out of the federal exemption scheme. He contends that New York has provided a more expansive list of exemptions than the Code and thus has deliberately excluded debtors domiciled in New York from the application of section 522. While we agree that New York was given and exercised the power to provide a more liberal list of exemptions, this does not render superfluous section 522(b)(2)(A). The mere fact that a federal statute incorporates a state statute does not override the provisions of the former. The two can and should be read in a manner consistent with each other. Here, Congress directed the bankruptcy courts to look to applicable state law if the state opted out of the federal scheme, and declared a specific date for determining the applicable law.

Many courts have been faced with choosing the proper time for the fixing of bankruptcy exemptions. All have pegged their analysis of claimed exemptions to the date the petition for relief is filed. *Tarrant v. Spenard Builders Supply, Inc. (In re Tarrant)*, 19 B.R. 360, 364 (Bankr.D.Alaska 1982) ("the filing of a petition constitutes a 'point of cleavage' at which exemptions are determined." citing *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924); *In re Sajkowski*, 49 B.R. 37 (Bankr.D.R.I. 1985); *In re Myers*, 17 B.R. 410 (Bankr.E. D.Cal.1982).

The language "the law that is applicable on the date of filing" has been interpreted (and we see no other plausible reading without reconstructing the statute) as requiring the application of the state law in force on the date the petition was filed. *In re Rester*, 46 B.R. 194, 200 n. 12 and cases therein cited (S.D.Alabama 1984). The rule has been steadfastly applied even when the state statute was amended to provide the debtor with a greater exemption subsequent to the filing date. *In re Gold*, 48 B.R. 44 (Bankr.S.D.Fla.1985) (where amendment to Florida constitution was not in effect or applicable on the day of the filing, the debtor was not entitled to the exemption); *Hollytex Carpet Mills v. Ted-*

---

**8.** Because we find that § 282 of the Debtor and Creditor Law on September 19, 1985 is the law applicable to this case, we need not pass on the issue of whether § 5205(c) of the CPLR as amended would apply retroactively or whether application of the amendment would constitute an impermissible taking of property.

338

*ford,* 691 F.2d 392 (8th Cir.1982) (the proper date for determining exemptions is the date of the filing of the petition. A change in the state law subsequent to that date does not apply); *F & M Marquette National Bank v. Richards (In re Richards),* 43 B.R. 554, 562 (Bankr.D.Minn.1984) *rev'd on other grounds* 780 F.2d 24 (8th Cir.1985) ("[A] debtor is not allowed to better his position regarding exemptions during the pendency of the case due to post-petition changes in applicable exemption laws"); *Anderson v. Burnham (In re Burnham)* 12 Bankr. 286, 298 (Bankr.N.D.Ga.1981) (Because state law at time debtor filed did not require debtor to employ state exemptions, later amendment opting out of federal exemption scheme was not applicable); *Accord Littell v. Oregon (In re Littell)* 6 B.R. 85, 88, (Bankr.D.Ore.1980) ("In exemption questions ... it is well settled that the debtor may not benefit from a change in the law taking effect after the filing of the bankruptcy"); *cf. In re Fossum,* 59 B.R. 820 (Bankr.D.Minn.1986) (amendment to Minnesota statute to increase exemption in tools of the trade from $5,000 to $10,000 was not available to debtor who filed petition and incurred the underlying debt prior to the effective date of the amendment). Accordingly, section 282 of the Debtor and Creditor Law must be applied in this case as it stood on September 19, 1985.

■ The wording of Debtor and Creditor Law section 282 insofar as it pertains to exemptions for pension and profit sharing plans is virtually identical to that contained in section 522(d)(10)(E) of the Code. In light of the dearth of case law in New York we are guided by the decisions under the federal statute. In *In re Donaghy,* 11 B.R. 677 (Bankr.S.D.N.Y.1981) two elderly debtors had a combined total of $21,992.87 in accrued pension benefits. Three weeks prior to filing the bankruptcy petition, the husband exercised an option and received the entire balance in the account. When he filed a joint petition, the account was listed as exempt pursuant to section 522(d)(10)(E). The chapter 7 trustee argued that the account was not within the exemption for pension plans because the debtors could exercise complete control over the monies prior to the filing of the bankruptcy. The court held that this argument "elevate[s] form over substance ... and [that] the spirit of the congressional intent is to exempt qualified pension benefits that are 'akin to future earnings of the debtor' ... This sum is intended to function as a wage substitute at some future period and during that future period to afford the debtors an opportunity to get back on their feet and support the basic requirements of life." *Donaghy, supra,* 11 B.R. at 680 (Bankr.S. D.N.Y.1981) (citation omitted). Thus, irrespective of whether the debtor has complete control over the Keogh Accounts and IRA, they are exempt to the extent reasonably necessary for Dr. Fill's support.[9]

■ We turn, therefore, to a consideration of whether the Keogh Accounts and IRA are reasonably necessary for the support of the debtor or any dependent of the debtor. The Trustee, since he objects to the exemptions, bears the burden of proof. *In re Woodford,* 73 B.R. 675, 678 (Bankr.N. D.N.Y.1987); Fed.R.Bankr.P. 4003(c).

The Trustee contends that the debtor is a highly trained physician, currently engaged in an active medical practice, who had his highest adjusted gross income, $68,138, in 1986. Recognizing the possibilities presented by Dr. Fill's illnesses, the Trustee argues that even if the debtor is prevented from practicing medicine, either his

9. The Trustee contends that because the debtor has a present ability to withdraw the funds from the Keogh and IRA Accounts, they are in the nature of a self-settled trust and therefore are property of the estate under section 541 of the Code. The Trustee concludes that he can therefore exercise the same control as the debtor and pay the funds over to the estate. The debtor does not dispute that the Keogh Accounts and IRA are property of the estate pursuant to section 541, and are not excluded by section 541(c)(2). Rather he seeks to exempt this property from the estate by reason of section 522. Accordingly, we need not resolve the issue of whether ERISA-pension trusts, Keogh Accounts and similar accounts are excluded from property of the estate by reason of section 541(c)(2), *see, e.g., In re Graham,* 726 F.2d 1268 (8th Cir. 1984); *cf. Clotfelter v. Ciba–Geigy Corp. (In re Threewitt),* 24 B.R. 927, 8 C.B.C.2d 890 (D.Kan. 1982).

former wife will support him [10] or his social security payments alone would be sufficient for his reasonable support. In addition, the Trustee asserts that the Debtor's living expenses are extremely small and that he has no dependents.

In determining the definition of "reasonably necessary" we are guided by the National Conference of Commissioners on Uniform State Laws which promulgated a Uniform Exemptions Act. Section 6(b) provides the following definition:

> The phrase 'property to the extent reasonably necessary for the support of him and his dependents' means property required to meet present and anticipated needs of the individual and his dependents, as determined by the court after consideration of the individual's responsibilities and all the present and anticipated property and income of the individual, including that which is exempt.

This has been followed and expounded upon by several courts, including the court in *Warren v. Taff (In re Taff)*, 10 B.R. 101 (Bankr.D.Conn.1981). The *Taff* court interpreted the language as requiring the court to "take into account other income and exempt property of the debtor, present and anticipated, ... and that the appropriate amount to be set aside for the debtor ought to be sufficient to sustain basic needs, not related to his former status in society or the lifestyle to which he is accustomed, but taking into account the special needs that a retired and elderly debtor may claim." *Warren v. Taff (In re Taff)*, 10 B.R. 101, 107 (Bankr.D.Conn.1981).

Given Dr. Fill's age and ill health, we must be particularly careful that we not leave him unable to meet his reasonable expenses. Although the Trustee suggests that we look to Mrs. Fill to support him, the Fills are divorced and she has no obligation for his support.[11] Dr. Fill's income is about to be halved. Even if we assume that his health will permit him to continue working indefinitely, and if we use 1986,

his most lucrative year of practice, as a guide, he can expect to earn somewhere around half of his $68,138, or $34,000 yearly. This leaves a very small cushion over his basic necessities of $30,000 (which does not include income taxes). We must factor into the delicate balance of this equation the variable of demonstrated ill health, for in those years when Dr. Fill was incapacitated for periods of time his earnings were drastically reduced. Moreover, we cannot expect his expenses to remain static; undoubtedly, his costs of living will increase. His other exempt property valued at an aggregate of $3,000 is not substantial, consisting of clothing, a 1975 Mercedes Benz which, because of its limited value, the Trustee declined to sell, and miscellaneous office furniture and medical equipment.

■ Although Dr. Fill urged us to consider as reasonably necessary his funding of his son's graduate education, we cannot do so. Section 282 allows a debtor to exempt profit or pension plans to the extent reasonably necessary for the support of a dependent of the debtor. Dependent is defined in New York Domestic Relations Law § 31 (McKinney 1988) as "any person who is entitled to support pursuant to this article [3–A]." Section 32 sets forth the people who are required to provide support for the purpose of article 3–A. As pertinent, it provides "parents [are] liable for support of their child or children under twenty-one years of age." Thus, the New York legislature has chosen to terminate parents' legal responsibility for children once they attain twenty-one years of age. *See Bani–Esraili v. Wald*, 127 Misc.2d 202, 485 N.Y. S.2d 708, 709 (S.Ct.1985), *aff'd* 69 N.Y.2d 807, 513 N.Y.S.2d 382, 505 N.E.2d 947 (1st Dept.1987). Dr. Fill's son is twenty-one and therefore, no longer a legal dependent. Thus the expenditures for the son's education and living expenses cannot be considered reasonably necessary.

■ Nonetheless, based upon our review of the entire record we find that the Trust-

---

**10.** This supposition is predicated entirely upon the generosity of the debtor's former wife who has cared for him during his illnesses and has continued to reside with him because of his precarious state of health.

**11.** It is true that she comes from a wealthy family, but she is not employed, has no particular skills and no college education, and the uncontradicted testimony in this proceeding establishes that her mother is now senile and very stingy with her daughter, unlike in earlier times.

ee has not overcome the debtor's showing that he will likely be unable to generate sufficient income to sustain his basic needs for the balance of his years.[12] Accordingly, the Keogh Accounts and IRA are reasonably necessary for his support and are properly claimed as exempt. Accordingly, the Trustee's objection is overruled. IT IS SO ORDERED.

---

**12.** Commendably, the Trustee does not request us to confine our analysis to Dr. Fill's expenses and income as they exist today, notwithstanding that there is some small support for that sort of analysis. *See, e.g. In re Kochell,* 26 B.R. 86 (Bankr.W.D.Wisc.1982), *aff'd* 732 F.2d 564 (7th Cir.1984). We believe that to refuse to look to the reasonably foreseeable future where the debtor is elderly or infirm perverts the intention underlying the exemption permitted for pension and profit-sharing plans. *Accord Woodford, supra,* 73 B.R. at 680 (Bankr.N.D.N.Y.1987); *Donaghy, supra,* 11 B.R. at 680 (Bankr.S.D.N.Y. 1981).