In re Paul Ervin BATES, Debtor.

Bankruptcy No. 94–10329.

United States Bankruptcy Court,
D. Maine.

Dec. 13, 1994.

Alan F. Harding, Hardings Law Offices, Presque Isle, ME, for First Citizens Bank.

Kim M. Vandermeulen, Vandermeulen, Goldman & Allen, P.A., Augusta, ME, for debtor.

Paul French.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

Before the court are First Citizens Bank's ("First Citizens" or "the bank") objection to the debtor's exemption claim in a self-directed individual retirement account ("IRA") and the debtor's motion to avoid First Citizens' lien in the same asset. For the reasons set forth below, the bank's objection is overruled and the debtor's lien avoidance motion is, after a fashion, granted.[1]

## BACKGROUND

Paul E. Bates ("Bates" or "debtor") filed a voluntary Chapter 7 petition on June 29, 1994. Among his exemption claims he designated his "self-directed IRA held in First Citizens Bank stock—500 shares approximate value $18,000.00." As of the petition date, the account was impressed with an $18,500.00 lien in favor of First Citizens. First Citizens timely objected to Bates' claimed IRA exemption. Subsequently, Bates filed a § 522(f) motion to avoid the bank's lien on the account.

## FACTS

Before bankruptcy, Bates was a self-employed businessman. He established an individual retirement account in 1981. Although he initially invested in mutual funds, he later converted the IRA holdings to First Citizens stock.

Bates is a single, fifty year-old college graduate, without dependents. Although he has substantial experience in sales and management, having owned and operated several small businesses, including a bowling alley, a car dealership and a sports shop, Bates is presently unemployed and without immediate employment prospects. The IRA is the only retirement fund Bates owns. His exempt property beyond the IRA is modest.[2]

---

1. These consolidated contested matters have been submitted on an agreed record, including factual stipulations and the transcript of the debtor's deposition. This memorandum sets forth findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052 and 9014.

Unless otherwise noted, all references to statutory sections or to "the Code" are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, et seq. References to "M.R.S.A." are to the Maine Revised Statutes Annotated (West 1980 & Supp.1994).

2. In addition to the IRA, Bates has claimed exemptions in the following assets: 1985 Subaru with an estimated value of $500.00; clothing with a total value of $500.00; household furnishings with a total aggregate value of $2,000.00; and cash in the amount of $400.00. Bates' home, valued at $60,000.00 is encumbered by mortgages totalling in excess of $190,000.00 and a judicial lien of approximately $30,000.00.

First Citizens obtained attachment and execution on trustee process against Prudential Securities, Inc., custodian of the IRA, well prior to Bates' bankruptcy filing.[3] The bank's lien claim exceeds the estimated value of the IRA.

## DISCUSSION

### A. Validity and Extent of Exemption

### 1. Is Bates' Self–Directed IRA Exempt?

#### a. Burden of Proof.

As the party objecting to the debtor's exemption claim, First Citizens bears the burden of "proving that the exemptions are not properly claimed." Fed.R.Bankr.P. 4003(c). See In re Maylin, 155 B.R. 605, 614 (Bankr. D.Me.1993).

#### b. The Statute.

Maine has accepted the congressional invitation, extended in 11 U.S.C. § 522(b)(1), to "opt out" of § 522(d)'s federal exemption scheme. 14 M.R.S.A. § 4426. In re Maylin, 155 B.R. at 608 n. 6; In re Saturley, 149 B.R. 245, 246 n. 5 (Bankr.D.Me.1993). Thus, the question whether Bates' IRA is exempt is determined by 14 M.R.S.A. § 4422, which provides:

The following property is exempt from attachment and execution, except to the extent that it has been fraudulently conveyed by the debtor:

\* \* \* \* \* \*

13. **Disability benefits; pensions.** The debtor's right to receive the following:

\* \* \* \* \* \*

E. A payment under a stock bonus, pension, profitsharing, annuity or similar plan or contract on account of illness, disability, death, age or length of service to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless:

(1) The plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under the plan or contract arose;

(2) The payment is on account of age or length of service; and

(3) The plan or contract does not comply under the United States Internal Revenue Code of 1954, Sections 401(a), 403(a), 403(b), 408 or 409.

Maine's legislature enacted 14 M.R.S.A. § 4422 in 1981 as a component of its opt-out legislation. See 1981 Me.Laws, ch. 431 sec. 2 (amended 1985, 1989 and 1991); 14 M.R.S.A. § 4426; 11 U.S.C. § 522(b)(1). With respect to "stock bonus, pension, profitsharing, annuity or similar plan[s]," the state exemption mirrors the Bankruptcy Code. See 11 U.S.C. § 522(d)(10)(E). Cf. In re Langley, 21 B.R. 772, 773 n. 3 (Bankr.D.Me.1982) (1981 amendment to Maine exemption statute meant to adopt federal exemptions in absence of more generous state exemptions); In re Breau, 17 B.R. 697, 698 (Bankr.D.Me. 1982) (same).

State authority addressing the scope and content of 14 M.R.S.A. § 4422(13)(E) is nonexistent. Thus, authorities interpreting its federal counterpart provide the best available guidance on that score. Cf. In re Langley, 21 B.R. at 773 n. 3 (cases interpreting 11 U.S.C. § 522(d)(6) consulted to interpret 14 M.R.S.A. § 4422(5) (tools of trade exemption)).

Finally, in divining the exemption statute's content, an over-arching principle of statutory construction applies: "[E]xemption statutes are to be liberally construed in favor of the debtor." In re Chiz, 142 B.R. 592, 593 (Bankr.D.Mass.1992) (quoting American Honda Finance Corporation v. Cilek (In re Cilek), 115 B.R. 974, 989 (Bankr.W.D.Wis. 1990)). See also In re Geise, 992 F.2d 651, 656 (7th Cir.1993); Wallerstedt v. Sosne (In re Wallerstedt), 930 F.2d 630, 631–32 (8th Cir.1991); NCNB Texas National Bank v. Volpe (In re Volpe), 943 F.2d 1451, 1453 (5th Cir.1991); Bartlett v. Giguere (In re Bartlett), 168 B.R. 488, 494 (Bankr.D.N.H.1994);

---

**3.** See Me.R.Civ.P. 4A, 4B and 69; 14 M.R.S.A. §§ 2951, 4151 and 4651–A.

, Bates has asserted that the bank's lien acquisition constituted a preferential transfer, raising the possibility that he might proceed under §§ 522(h), 547(b). That issue is not now before the court and, after today's decision, is moot.

*In re Link,* 172 B.R. 707, 708–09 (Bankr. D.Mass.1994); *In re Maylin,* 155 B.R. at 615; *In re Grindal,* 30 B.R. 651, 653 (Bankr.D.Me. 1983).

Bates' IRA is exempt if two questions are answered affirmatively: (1) Are individual retirement accounts within the 14 M.R.S.A. § 4422(13)(E)'s ambit? (2) If so, to what extent may we conclude that Bates' account is "reasonably necessary for [his] support?" The former inquiry posits a legal question; the latter a factual one. Answers follow.

### c. Is an IRA Within the Exemption?

Whether IRAs are exempt under § 522(d)(10)(E) and similar state exemption statutes is an unsettled question. There is no controlling authority in the First Circuit or this district; cases from other jurisdictions are in conflict. *See generally Norton Bankruptcy Law and Practice 2d* § 46:17 at 46–36 n. 68 (1994).

Substantial case law holds that IRAs come within § 522(d)(10)(E) or its state law analogs. *See, e.g., In re Yee,* 147 B.R. 624 (Bankr.D.Mass.1992); *In re Hickenbottom,* 143 B.R. 931 (Bankr.W.D.Wash.1992); *In re Chiz,* 142 B.R. 592, 593 (Bankr.D.Mass.1992); *In re Bell,* 119 B.R. 783 (Bankr.D.Mont.1988) (state law incorporating § 522(d)(10)(E)); *In re Staniforth,* 116 B.R. 127 (Bankr.W.D.Wis. 1990) (state law); *In re Cilek,* 115 B.R. at 979; *In re Bloom,* 91 B.R. 445 (Bankr. N.D.Ohio 1988) (state law); *In re Worthington,* 28 B.R. 736 (Bankr.W.D.Ky.1983) (state law). *Cf. In re Montavon,* 52 B.R. 99 (Bankr.D.Minn.1985) (Keogh or IRA within exemption when debtor has reached statutory minimum age to withdraw funds without

penalty); *In re Sopkin,* 57 B.R. 43 (Bankr. D.S.C.1985) (same).

There are more than a few cases to the contrary, including a Third Circuit decision and cases following in its wake. *See, e.g., Clark v. O'Neill (In re Clark),* 711 F.2d 21, 23 (3d Cir.1983) (Keogh plan funds not exempt unless debtor has "present right" to receive payments, as opposed to right to future payments); *Velis v. Kardanis (In re Velis),* 123 B.R. 497, 510 (D.N.J.) (following *Clark* ), *aff'd in part, rev'd in part,* 949 F.2d 78 (3d Cir.1991); *In re Heisey,* 88 B.R. 47, 50–51 (Bankr.D.N.J.1988); *In re Matthews,* 65 B.R. 24 (Bankr.N.D.Iowa 1986); *In re Innis,* 62 B.R. 659, 660 (Bankr.S.D.Cal.1986); *In re Pauquette,* 38 B.R. 170 (Bankr.D.Vt. 1984); *In re Lowe,* 25 B.R. 86, 88 (Bankr. D.S.C.1982).

### i. What's the "Plan"?

 First Citizens argues that Bates' IRA (on which he is too young to draw without penalty) does not come within the scope of an exemption for a "stock bonus, pension, profitsharing, annuity or similar plan" providing payment on account of "illness, disability, death, age or length of service." If the IRA is to qualify as exempt, it must be a "similar plan" providing for payments on account of "age."[4] I conclude that it is.

The Internal Revenue Code's provision for and treatment of IRAs supports the conclusion that they are sufficiently "similar" to other plans aimed to enable working taxpayers to accumulate assets during their productive years so that they might draw on them during retirement. *In re Chiz,* 142 B.R. at 593.[5] The tax code extends to IRAs benefits

---

4. An IRA is not a "stock bonus, pension, profitsharing [or] annuity" plan or "contract." *See In re Hall,* 151 B.R. 412, 425–26 (Bankr.W.D.Mich. 1993) (emphasis on "similar plan" and "age"); *In re Yee,* 147 B.R. at 626; *In re Chiz,* 142 B.R: 592 (Bankr.D.Mass.1992) (IRAs are "similar plans" on account of "age"); *In re Hickenbottom,* 143 B.R. at 933; *In re Herbert,* 140 B.R. 174, 177 (Bankr.N.D.Ohio 1992). *Cf. In re Cilek,* 115 B.R. at 987–88 (IRAs are "similar plans" under § 522(d)(10)(E), but "on account of" qualification applies to "contracts" only).

 IRA assets may be drawn upon without penalty at the time of the taxpayer's death or disability, in addition to when the statutory minimum age is

met. 26 U.S.C. § 72(q). Thus, IRAs might be characterized as providing for payment "on account of" death or disability, too.

5. In *Chiz* Judge Queenan noted that the very structure of the Internal Revenue Code, although not determinative, lends support to the notion that Congress viewed IRAs as plans "similar to" pension, profitsharing and stock bonus plans. IRAs are addressed in 26 U.S.C. § 408, a provision found within I.R.C.'s Subchapter D, Part 1, entitled "Pension, Profit Sharing, Stock Bonus Plans, Etc." 142 B.R. at 592. In addition, the section providing a tax deduction for IRA contri-

similar to those provided pension, profitsharing and stock bonus plans, *viz.* deductible contributions, tax-free interest accrual and taxation as an annuity upon distribution. *Id.* at 592–93 (citing 26 U.S.C. §§ 219, 408(e) & 408(d)). Age restrictions on the time of distribution (*e.g.,* penalty on early withdrawal, 26 U.S.C. § 72(q)) and age limitations on the deductibility of contributions (no deductions for IRA contributions after age 70½, 26 U.S.C. § 219) reflect legislative intent to create a program providing income to taxpayers in "advanced years." *Id.*

Although after age 59½ the individual may obtain the funds without penalty whether or not he is retired or disabled so that IRAs differ from retirement plans in this respect, the clear inference from these tax provisions is Congress envisioned that the funds would be accumulated during normal working years and enjoyed during normal retirement years.

*Id.* at 593. *See In re Yee,* 147 B.R. at 626; *In re Staniforth,* 116 B.R. at 131 (IRA is a "systematic arrangement for guaranteeing an income upon retirement according to definitely established rules"); *In re Cilek,* 115 B.R. at 988 (IRA "intended to function as a wage substitute at some future period") (citing *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974)).

■ That a debtor has control over and (penalty notwithstanding) access to IRA assets before retirement does not defeat the exemption. Irrespective of such control, an individual retirement account is a "plan" providing a "right to receive" "payments" on account of "age." *See, e.g., In re Link,* 172 B.R. 707, 710; *In re Hickenbottom,* 143 B.R.

at 933–34; *In re Yee,* 147 B.R. at 625–26; *In re Chiz,* 142 B.R. at 592–93; *In re Cilek,* 115 B.R. at 979–88; *In re Kerr,* 65 B.R. 739 (Bankr.D.Utah 1986); *In re Fisher,* 63 B.R. 649 (Bankr.W.D.Ky.1986); *In re Worthington,* 28 B.R. at 739. The exemption does not require that plans within its scope be iron clad or irrevocable. *Cf. Patterson v. Shumate,* —— U.S. ——, ——, 112 S.Ct. 2242, 2249, 119 L.Ed.2d 519 (1992) (describing IRA as a "pension plan" qualifying for "preferential tax treatment" without anti-alienation requirements imposed by ERISA) (dictum).[6]

### ii. Present Right Not Required.

■ First Citizens also asserts that, even if IRAs may be within the exemption's reach, such is not always the case. According to the bank, the exemption applies only if the debtor has a *present* (unpenalized) right to receive payments: because Bates has not yet reached age 59½[7], he may not take advantage of the exemption.

Some courts, including one court of appeals, hold that § 522(d)(10)(E)'s objective goes no further than to assure the debtor's fresh start immediately after bankruptcy. They consider the right to payments from an IRA exempt only to the extent *presently* necessary for the support of the debtor and his or her dependents. Under this view, exempting a right to future payments goes too far, providing protection out of a "concern for the debtor's long term security which is absent from the statute." *In re Clark,* 711 F.2d at 23.[8] *See also, e.g., Bohm v. Brewer (In re Brewer),* 154 B.R. 209, 213 (Bankr.W.D.Pa.1993); *In re Chick,* 135 B.R. 201, 203 (Bankr.D.Conn.1991); *In re Heisey,*

---

butions is entitled "Retirement Savings." 26 U.S.C. § 219.

**6.** There is authority to the contrary. *See In re Pauquette,* 38 B.R. 170 (Bankr.D.Vt.1984) (debtor's control of funds in IRA renders it dissimilar from other retirement plans). *See also In re Moss,* 143 B.R. 465, 466–67 (Bankr.W.D.Mich. 1992); *In re Swenson,* 130 B.R. 99, 101 (Bankr. D.Utah 1991); *In re Matthews,* 65 B.R. at 25; *In re Fichter,* 45 B.R. 534, 537 (Bankr.N.D.Ohio 1984). But fixing on the debtor's right to control IRA assets as disqualifying the exemption confuses the question whether the asset is within or without the bankruptcy estate under § 541(c)(1) with the question whether, once within the es-

tate, the asset will be set aside as exempt. *See In re Cilek,* 115 B.R. at 979–88. *Cf. Patterson,* —— U.S. at —— and n. 5, 112 S.Ct. at 2249 and n. 5.

**7.** Neither is he dead or disabled.

**8.** *Clark* addressed a debtor's claimed exemption of a right to future payments under a "Keogh" plan. The operation of § 522(d)(10)(E)'s exemption on such plans is identical to its operation on IRAs. 711 F.2d at 24 n. 1 (Becker, J., concurring); *In re Velis,* 949 F.2d 78 (3d Cir.1991) (applying *Clark* principle to an IRA); *In re Brewer,* 154 B.R. at 213; *In re Heisey,* 88 B.R. at 50–51.

88 B.R. at 51. *Cf. In re Velis*, 949 F.2d at 83 (affirming denial of exemption to 63–year–old debtor because payments were not reasonably necessary for support). Although this approach makes the exemption's application straightforward and simplifies the "reasonably necessary" analysis by limiting consideration to the debtor's existing circumstances, it is flawed for a number of reasons.

First, neither the Code nor Maine's statute limits the exemption to "present," "existing" or "immediate" payment rights. § 522(d)(10)(E); 14 M.R.S.A. § 4422(13)(E). *See In re Hall*, 151 B.R. at 425–27 (proper interpretation of statute demands that IRAs are "similar plans or contracts"); *In re Yee*, 147 B.R. at 625–26 (subject and purpose of § 522(d)(10)(E) look to the future); *In re Cilek*, 115 B.R. at 978–79. The exemption applies to a debtor's "right to receive" a payment. It is forward looking. *See In re Chiz*, 142 B.R. at 593; *In re Hickenbottom*, 143 B.R. at 933 (IRAs designed to function as a substitute for future earnings); *In re Miller*, 33 B.R. 549, 552 and 53 n. 8 (Bankr. D.Minn.1983) (referring to § 522(d)(10) legislative history and Uniform Exemption Act); *Warren v. Taff (In re Taff)*, 10 B.R. 101, 107 (Bankr.D.Conn.1981) (setting aside amounts for "special needs" when debtor becomes elderly).[9]

Second, the present right limitation would work inequitable, if not downright strange, results in many cases. The debtor who filed for relief at, say, age 59 would have no resort to the exemption, although one who waited until age 59½ would be fully entitled to it, subject only to its "reasonably necessary" condition.

Third, characterizing asset accumulation for retirement as a matter of "long term security," *e.g., In re Clark*, 711 F.2d at 23, ignores the reality that, in most instances, individuals must save throughout their working years in order to have funds available for their retirement needs. Providing for "long term security" is, in every sense, an individual's present (and continuing) concern. By creating devices such as IRAs the Internal Revenue Code recognizes as much. To the extent assets are needed for reasonable support upon retirement, the need to hold them and retain them presently is real.[10]

The exemption at issue applies to a debtor's right to receive payments from an individual retirement account whether or not the right is fully and freely exercisable on the date of his or her bankruptcy petition.

### *iii. Summing Up.*

In § 522(d)(10)(E) Congress created an exemption protecting plans providing future payments "akin to future earnings." *In re Chiz*, 142 B.R. at 593 (citing legislative history); *In re Cilek*, 115 B.R. at 979. Maine's exemption statute does the same. Individual retirement accounts come within both the letter and the spirit of the exemption.[11]

### *2. Extent of the Exemption.*

■ Given that an IRA is within the exemption's scope, the level of Bates' exemption rights remains at issue. Section 4422(13)(E) protects debtors' IRA assets only "to the extent reasonably necessary for the support of the debtor and any dependent of

---

9. *See also* discussion *infra* at n. 13 (exemption takes into account foreseeable circumstances).

10. One need only think again of the debtor who files for relief approaching, but not yet having reached, age 59½ or retirement.

To the extent that a potential for abuse exists, either through funnelling non-exempt assets into an IRA in anticipation of bankruptcy or through accumulating and exempting excessive resources, it is blunted by safeguards within and without the Code. *See In re Chiz*, 142 B.R. at 593 (noting potential to avoid fraudulent transfers under § 548). *See also* § 522(d)(10)(E) & 14

M.R.S.A. § 4422(13)(E) (limiting exemption to extent "reasonably necessary for support"); 14 M.R.S.A. §§ 4422 (providing no exemption for assets fraudulently transferred), 4423 (limiting pre-bankruptcy exemption planning).

11. Excluding IRAs from the exemption unfairly affects self-employed debtors, for whom the IRA is a fundamental retirement savings plan, in comparison to employee-debtors covered by pension or profit-sharing plans. *In re Clark*, 711 F.2d at 24 (Becker, J., concurring). *Cf.* Graham Parker, *Daddy's a Postman, on* Human Soul (RCA Records 1989) (on security of civil service retirement).

the debtor." [12] For each debtor who comes before the court, the *extent* of the exemption (*i.e.,* how much value within the exemption category the debtor may retain) is a function of the case's unique facts. *In re Link,* 172 B.R. 707, 710–11; *In re Lima,* 169 B.R. 486, 487–88 (Bankr.D.Mass.1994); *In re Bogart,* 157 B.R. 345, 347 (Bankr.N.D.Ohio 1993); *In re Sisco,* 147 B.R. 495, 497 (Bankr.W.D.Ark. 1992). *See also In re Yee,* 147 B.R. at 626 (exemption sustained in light of objecting creditor's failure to come forward with any evidence to demonstrate account balance exceeded debtor's needs).

The "reasonably necessary for … support" limitation is rooted in the Uniform Exemption Act, which provided:

> The phrase "property to the extent reasonably necessary for the support of him and his dependents" means property required to meet present and anticipated needs of the individual and his dependents, as determined by the court after consideration of the individual's responsibilities and all the present and anticipated property and income of the individual, including that which is exempt.

*In re Fill,* 84 B.R. 332, 339 (Bankr.S.D.N.Y. 1988) (quoting Uniform Exemption Act § 6(b)).[13] *See also In re Taff,* 10 B.R. at 107 (court to determine appropriate amount to be "set aside … to sustain basic needs, not related to … former status in society or lifestyle …, but taking into account the special needs that a retired and elderly debtor may claim").

■ Although prognostication can never be certain, a measure of it necessarily accompanies the exemption's fair application. But the bankruptcy judge need not be a seer. Focussing on pertinent factors orders the exercise. They include:

(1) debtor's present and anticipated living expenses;

(2) debtor's present and anticipated income from all sources;

(3) debtor's (and debtor's dependents') age;

(4) debtor's (and debtor's dependents') health;

(5) debtor's ability to work and earn a living;

(6) debtor's training, job skills and education;

(7) other available assets, including exempt assets;

(8) debtor's ability (and opportunity) to save for retirement;

(9) debtor's (and debtor's dependents') special needs;

(10) liquidity of other assets; and

(11) financial obligations that will survive bankruptcy.

*See, e.g., In re Link,* 172 B.R. 707, 710–11; *In re Lima,* 169 B.R. at 487–88; *In re Bogart,* 157 B.R. at 347; *In re Sisco,* 147 B.R. at 497; *In re Smith,* 142 B.R. 334, 336 (Bankr.E.D.Mo.1992); *In re Comp,* 134 B.R. 544, 554–55 (Bankr.M.D.Pa.1991); *In re Rector,* 134 B.R. 611, 616–17 (Bankr.W.D.Mich. 1991); *In re Hentzen,* 126 B.R. 600, 602–03 (Bankr.D.Kan.1991); *In re Velis,* 123 B.R. at 510; *In re Bartlett,* 67 B.R. 455, 457 (Bankr. W.D.Mo.1986); *In re Flygstad,* 56 B.R. 884, 889–90 (Bankr.N.D.Iowa 1986). Such an evaluation enables the court to determine, as best it can, whether the debtor has the time and means to fund retirement if his or her IRA is determined to be non-exempt. *In re Sisco,* 147 B.R. at 497; *In re Flygstad* 56 B.R. at 889–90. *See also In re Link,* 172 B.R. 707, 710–11 (collecting cases and summarizing results on application of factors).

■ Bates' health is good. He is well-educated. He has no dependents and, apparently, no "special needs." However, he is unemployed and has no employment pros-

**12.** In this respect, too, the state exemption tracks Bankruptcy Code language, *see* § 522(d)(10)(E), and pertinent federal authorities are instructive. *See* discussion *supra* at 106–07.

**13.** Other courts, including New York state courts, disagree with *Fill*'s conclusion that IRAs are exempt at all under the New York exemption statute as it now reads. *E.g. In re Orlebeke,* 141 B.R. 569, 570–71 (Bankr.S.D.N.Y.1992); *In re Iacono,* 120 B.R. 691, 693–94 (Bankr.E.D.N.Y. 1990). Nonetheless, *Fill* illuminates the "reasonably necessary for support" component (*i.e.* limitation) by reference to the Uniform Exemption Act and § 522(d)(10)(E), both of which are pertinent to the Maine exemption statute.

pects. He cannot afford his mortgage and relocating to an apartment would save him little. Substantial tax debt will survive his bankruptcy discharge.[14] And, notwithstanding his considerable business experience, economic conditions in Aroostook County, where Bates has long resided, can be charitably described as "unpromising." He is 50 years old, thus limiting available time to rebuild retirement resources and, realistically, diminishing his range of available employment opportunities. In later years, the debtor will need the entire $18,000.00 IRA to support him.

For these reasons, I conclude that the debtor's IRA is exempt *in toto*.

### B. Lien Avoidance

In his § 522(f) motion, Bates asks this court to avoid First Citizens' execution lien on his IRA. His position is that "if the Court agrees with the debtor's assertion that the self-directed IRA is exempt pursuant to 14 M.R.S.A. § 4422(13)(E), then it automatically follows that [the] debtor may avoid the First Citizens Bank lien pursuant to the provisions of § 522(f)." [15] First Citizens does not seriously dispute the point.[16]

The utility of garden variety § 522(f)(1) judicial lien avoidance in an opt-out jurisdiction is open to question. *See, e.g., Dorsey Distributing, Inc. v. Sanders (In re Sanders)*, 39 F.3d 258, 262 (10th Cir.1994) (§ 522(f) avoidance of nonconsensual lien on homestead is superfluous in an opt-out state

where lien cannot be fixed on the exemption in the first instance). *Compare In re Saturley*, 149 B.R. at 251 n. 20 (questioning need for and extent of § 522(f) lien avoidance in an opt-out state with value limitation on exemption) *with Henderson v. Belknap (In re Henderson)*, 18 F.3d 1305, 1310–11 (5th Cir. 1994), *cert. denied* —— U.S. ——, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994) (where judicial lien fixes upon homestead, but is unenforceable because exemption has no value limitation, lien may be avoided because it clouds title, impairing ability to convey property). But the result Bates seeks is available, albeit not through lien "avoidance" in the strict sense.

■ Given that the IRA is fully exempt, First Citizens' attachment and execution processes *cannot*, and *do not*, impair it. *See, e.g.*, 14 M.R.S.A. § 3131(1) (turnover orders transferring judgment debtor's property to judgment creditor may be issued only as to nonexempt assets); 14 M.R.S.A. § 3132 (court cannot order a lien on property subject to a possessory security interest to the extent that the judgment debtor's interest is exempt). *See also* 14 M.R.S.A. § 4151 (regarding personal property subject to attachment); 14 M.R.S.A. § 4651–A(2) (regarding execution liens on personal property); *Petit*, 590 A.2d at 1055. As a practical matter, however, while the dispute about whether Bates' IRA is exempt has simmered, those processes interfered with Bates' rights in the

---

**14.** I do not mean to imply that facing substantial nondischargeable tax obligations provides the same justification for a generous exemption that, say, post-bankruptcy child support obligations might. But the enduring tax debt is a fact of Bates' financial life and must be considered.

**15.** Section 522(f) provides, in pertinent part:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section if such lien is—
 (1) a judicial lien....

First Citizens' lien upon the IRA is a "judicial lien." *See* § 101(36) (defining "judicial lien" to include liens acquired by judgment, levy, sequestration, or other legal or equitable process or proceeding).

**16.** The bank's response to the motion is to assert that, because it completed execution against the IRA before Bates' bankruptcy, Bates' had no rights in the stock as of the date relief entered and, therefore, he may not avoid its lien. The argument is based on the assumption that the account is not exempt.

Only if the IRA were non-exempt could execution on it effectively dispose of Bates' rights in it. *See* 14 M.R.S.A. § 4422 (listed property is "exempt" from attachment and execution). *Cf. New England Mortgage Services Co. v. Petit*, 590 A.2d 1054 (Me.1991) (majority and dissenting opinions explaining interrelation of exemptions, attachment and execution). *Cf. also Owen v. Owen*, 500 U.S. 305, 310–11, 111 S.Ct. 1833, 1836–37, 114 L.Ed.2d 350 (1991) (question when considering judicial lien avoidance is what would have been debtor's entitlement but for the lien in question).

account, ostensibly transferring its value to the bank.

As a matter of state law, simply determining that the IRA is exempt frees it from First Citizens' execution lien. Thus, although the result is the same, the process is one of "exemption determination," rather than "lien avoidance."

### CONCLUSION

For the reasons set forth above, the debtor's IRA is fully exempt. It is and shall remain exempt to him and free from First Citizens' attachment and execution liens.

A separate order consistent with this memorandum shall issue forthwith.